IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| BEVERLY DARRAH, | |
| Plaintiff, | CV-08-67-BLG-RFC-CSO |
| vs. | |
| MONTANA RETAIL STORE EMPLOYEES HEALTH AND WELFARE PLAN, ZENITH ADMINISTRATORS, and INTERNATIONAL REHABILITATION ASSOCIATES, INC., DBA INTRACORP OR CARE ALLIES, | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| Defendants. | |

Plaintiff Beverly Darrah is suing Defendants for medical treatment benefits under the Employee Retirement Income Security Act ("ERISA"). Darrah, invoking the Court's jurisdiction under 29 U.S.C. § 1132(e)(2), claims Defendants improperly declined to authorize back surgery that her physician recommended. Cmplt. (Court's Doc. No. 1) at ¶¶ 5, 16-20. She also claims Defendants are liable for ERISA

penalties because they failed timely to give her plan documents that she requested.  Id. at ¶ 21.

Darrah seeks: (1) the Court's determination that Defendants' denial of medical treatment benefits was arbitrary, capricious, and an abuse of discretion; (2) the Court's order that Defendants pay for her back surgery even though she no longer is a plan member; (3) attorney fees and costs for bringing this action; and (4) an award of penalties under 29 U.S.C. § 1132(c) of "$110.00 per day for every day of Defendants' noncompliance in providing the requested ERISA documents."  Id., Prayer for Relief, ¶¶ 1-3, 5-6.[1]

The following motions are before the Court:

1.  Motion for Summary Judgment of ERISA Benefits Claim (Court's Doc. No. 28) made by Defendant International Rehabilitation Associates, Inc., doing business as Intracorp or Care Allies ("Care Allies")[2];

_____

[1]Judge Cebull, acting on the undersigned's recommendation and with Darrah's agreement, previously struck Darrah's request for general damages for physical pain and mental anguish.  See Court's Doc. No. 12.

[2]According to this Defendant, it used the "Care Allies" service mark in connection with services rendered for Defendant Zenith Administrators, Inc., that are the subject of this action.  Portions of the record refer to Intracorp and Care Allies interchangeably.  Care Allies's Mem. of Law in Support of Mtn. for Summary Judgment of ERISA Benefits Claim (Court's Doc. No. 29) ("Care Allies's Opening Br.") at 2, n.1.  For clarity and brevity, the Court will refer to this Defendant only as Care Allies.

2.    Darrah's Cross-Motion for Summary Judgment (Court's Doc. No. 32); and

3.    Care Allies's Motion for Summary Judgment on Darrah's claims under 29 U.S.C. §§ 1024 and 1132(c) (Court's Doc. No. 40).

Having reviewed the record, together with the parties' arguments in support of their positions, the Court issues the following Findings and Recommendations.  First, the Court addresses the pending motions to the extent that they relate to denials of Darrah's requests for lumbar fusion surgery.  Second, the Court addresses the motions as they relate to Darrah's request for Plan documents.

I.    BACKGROUND

Darrah formerly worked for Albertsons, Inc., and was enrolled in the Defendant Montana Retail Store Employees Health and Welfare Plan ("the Plan").  Cmplt. at ¶ 9; Care Allies's Stmt. of Facts (Court's Doc. No. 30) ("Care Allies's SF") at ¶ 2.  Defendant Zenith Administrators ("Zenith") is the Plan's administrator.  Cmplt. at ¶ 3; Care Allies's SF at ¶ 3.[3]   Care Allies, in turn, is under contract with

---

[3]The Court will sometimes refer to Defendants Montana Retail Store Employees Health and Welfare Plan and Zenith Administrators as "the Zenith Defendants."

Zenith to perform pre-authorization services for Plan members seeking inpatient hospitalizations.  Cmplt. at ¶ 4; Care Allies's SF at ¶ 3.

In July 2007, Darrah sought pre-authorization for lumbar fusion surgery at L5-S1.  Cmplt. at ¶ 11; Care Allies's SF at ¶ 4.  On July 26, 2007, Care Allies denied authorization for the surgery determining that it was "not medically necessary[.]"  Administrative Record ("AR") at 0001.[4]

Darrah, through her treating neurosurgeon, Robert Replogle, M.D., appealed the denial.  AR at 0065.  Care Allies upheld the denial. AR at 0010-0011.  The stated basis for denying the request initially and on appeal was that Darrah had not provided information sufficient to describe

> the severity and duration of [her] symptoms, physical and
> neurological examination findings and other treatment and
> test results.  There is no documentation of failure of a
> reasonable and appropriate course of conservative treatment
> for unremitting pain and disability that has proved
> refractory to at least six consecutive months of conservative
> medical management (e.g., exercise, analgesics, physical
> therapy, spinal education, activity/lifestyle modification,

---

[4]Care Allies conventionally filed the Administrative Record on January 7, 2009.  See Court's Doc. No. 31.  For brevity, the Court has not included the "LINA" prefix on page numbers when citing the Administrative Record.

psychological assessment/treatment as a contributor to
chronic pain).

Id.

Darrah, again through Dr. Replogle, asked for Care Allies's

further review of her request for pre-authorization for surgery.  AR at

0063.  Care Allies again denied the request, but this time on a different

basis.  AR at 0013.  Without commenting on the prior denials, this

denial letter to Darrah stated in part:

> Upon review of all available information your request for an
> L5-S1 lumbar fusion cannot be certified because you have
> degenerative changes at 4 lumbar spine levels.  This
> procedure at more than 2 levels (which you have) does not
> meet the guidelines of necessity of your insurance coverage.

Id.  It has been held that denying a request for benefits on entirely new

grounds in an administrative appeal does not comply with the statutory

requirements of notice and "full and fair review" where no further

administrative appeal is provided.  See Gagliano v. Reliance Standard

Life Insur. Co., 547 F.3d 230, 235-37 (4th Cir. 2008) (citing 29 U.S.C. §

1133 and holding that the proper remedy for procedural ERISA

violations is remand to the plan administrator).  See also Chuck v.

Hewlett Packard Co., 455 F.3d 1026, 1035 (9th Cir. 2006) (holding that

the usual remedy for a violation of § 1133 is to remand to the plan

administrator) .  Here, however, an opportunity for further

administrative review was provided.  The denial letter advised:

> If you disagree with our decision, you have the right to appeal it
> for a third time.  Your third level appeal will be conducted by an
> External Independent Review Organization.  Have your physician
> provide in writing to CareAllies the [specified] information....

AR at 13.  Rather than appeal for the third time, Darrah filed this

action.

## II.   STANDARD OF REVIEW

The Court first must determine the applicable standard of review

to employ in examining the decision to deny Darrah's request for pre-

authorization for lumbar fusion surgery.  The Ninth Circuit has stated

that, under ERISA, if a plan's language

> does not confer discretion on the administrator "to
> determine eligibility for benefits or to construe the terms of
> the plan," a court must review the denial of benefits de novo
> "regardless of whether the plan at issue is funded or
> unfunded and regardless of whether the administrator or
> fiduciary is operating under a possible or actual conflict of
> interest."  De novo is the default standard of review.
>
> *       *       *
>
> But if the plan does confer discretionary authority as a

matter of contractual agreement, then the standard of review shifts to abuse of discretion.  We have held that, for a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator.  The essential first step of the analysis, then, is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator.

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing, inter alia, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)) (emphasis in original).

Although all parties here agree that ERISA's abuse-of-discretion standard of review applies in this case,[5] Abatie requires the Court "to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator."  Abatie, 458 F.3d at 963.  Care Allies attached to its Statement of Facts in support of its summary judgment motion a Summary Plan Description ("SPD").  See Care Allies's SF at Ex. A.  The SPD's relevant language, found in the section entitled

_____

[5]Cmplt. at ¶¶ 16 and 17, and Prayer for Relief at ¶ 1; Care Allies's Opening Br. at 4-7; Darrah's Br. in Opposition to [Care Allies's] Mtn. for Summary Judgment and In Support of [Darrah's] Cross-Mtn. for Summary Judgment (Court's Doc. No. 33) ("Darrah's Opening Br.") at 3 (conceding that Darrah does not dispute that an "abuse of discretion" or an "arbitrary and capricious" standard of review applies here); Resp. to [Darrah's] Mtn. for Summary Judgment by Montana Retail Store Employees Health and Welfare Plan and Zenith Administrators (Court's Doc. No. 43) ("Zenith Defendants' Resp. Br.") at 4-5.

"Responsibilities for Plan Administration," provides:

> It is the express intent of this Plan that the Plan
> Administrator shall have maximum legal discretionary
> authority to construe and interpret the terms and provisions
> of the Plan, to make determinations regarding issues which
> relate to eligibility for benefits, to decide disputes which
> may arise relative to a Plan participant's rights, and to
> decide questions of Plan interpretation and those of fact
> relating to the Plan.  The decisions of the Plan
> Administrator will be final and binding on all interested
> parties except to the extent that such decisions may be
> determined to be arbitrary and capricious by a court having
> jurisdiction over such matter.

Id. at 64.

This language, which expresses the Plan's intent, and the express

agreement of the parties, compel the Court to conclude that the Plan

unambiguously confers discretion on the plan administrator.  The

Ninth Circuit has held that similar language from ERISA plans

granting the plan administrator power to interpret plan terms and

make final benefits determinations conferred discretion on the plan

administrator.  Abatie, 458 F.3d at 963-64 (holding plan language

stating "responsibility for full and final determination of eligibility for

benefits; interpretation of terms; determinations of claims; and appeals

of claims denied ... rests exclusively with" the plan administrator

conferred discretion on the administrator) (citing Bergt v. Ret. Plan for
Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1142 (9th Cir. 2002)
(holding that a plan conferred discretion because its terms granted the
administrator the "power" and "duty" to "interpret the plan and to
resolve ambiguities, inconsistencies and omissions" and to "decide on
questions concerning the plan and the eligibility of any Employee") and
Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1159 (9th
Cir. 2001) (holding that a plan providing that administrator "has the
full, final, conclusive and binding power to construe and interpret the
policy under the plan ... [and] to make claims determinations" grants
discretion)).

Having concluded that it will apply abuse-of-discretion review to
the determination on Darrah's claim, the Court next must "consider the
precise contours of the abuse of discretion standard ... before
determining whether the applicable standard was violated."  Nolan v.
Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009) (citing Abatie, 458
F.3d at 969).  In doing so, the Court must decide whether there exists
an administrator's conflict of interest that might affect the Court's

application of the abuse-of-discretion standard of review.  Under

Abatie, "[a]buse of discretion review applies to a discretion-granting

plan even if the administrator has a conflict of interest[,]" but that

review must be "informed by the nature, extent, and effect on the

decision-making process of any conflict of interest that may appear in

the record."  Abatie, 458 F.3d at 965, 967.

Here, Darrah has neither argued nor presented evidence that a

conflict of interest exists.  Also, the Zenith Defendants have

represented in briefing that

> the Plan, the Plan Administrator and Care Allies each held
> distinct roles under ERISA ... [and that] [n]either the Plan,
> the Plan Administrator nor Care Allies operated under a
> conflict of interest because none of them is or was
> "authorized both to decide whether [Ms. Darrah] is eligible
> for benefits and to pay those benefits."  Here, the Plan was
> responsible for paying any benefit, while Care Allies – which
> had no obligation to pay anything – was responsible for
> making a determination regarding precertification based on
> medical necessity.

Zenith Defendants' Resp. Br. at 5 (citation and emphasis omitted).

Darrah has not disputed this representation.  The Court,

therefore, is left to employ a "straightforward abuse of discretion

analysis."  Abatie, 458 F.3d at 968.  Under that analysis, the Court

must determine whether the decision denying Darrah's claim was arbitrary and capricious.  See Schikore v. BankAmerica Supplemental Retirement Plan, 269 F.3d 956, 961 (9th Cir. 2001).  This inquiry does not concern "whose interpretation of the plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable."  Winters v. Costco Wholesale Corp., 49 F.3d 550, 553 (9th Cir. 1995) (quoting Barnett v. Kaiser Found. Health Plan, Inc., 32 F.3d 413, 416 (9th Cir. 1994)).  The abuse-of-discretion standard, as applicable here, allows the Court to consider only the evidence that is part of the administrative record.  Banuelos v. Construction Laborers' Trust Funds for Southern Cal., 382 F.3d 897, 904 (9th Cir. 2004).

## III.   DISCUSSION

### A.   Lumbar Fusion Surgery Denials

The principal issue is whether Care Allies and the Zenith Defendants abused their discretion in denying Darrah's request for the Plan's authorization for back surgery that her physician recommended. As discussed below, under the deferential standard of review that must be applied, the Court concludes that they did not.

Darrah argues that she sought authorization for one-level lumbar
fusion surgery at L5-S1.  Darrah's Opening Br. at 2-4.  She argues that
the Plan's own "medical necessity guidelines" ("guidelines") provide
that "[l]umbar fusion ... for up to two adjacent spinal segment levels, is
considered medically necessary for ... chronic, presumably discogenic,
low back pain ...."  Id. at 2 (referring to AR at 0031).  She argues that
because the Plan's own guidelines provide that lumbar fusion surgery is
medically necessary, and because her treating physician recommended
it, Defendants' refusal to authorize the surgery was arbitrary,
capricious, and an abuse of discretion.  Id. at 3.

Darrah also argues that: (1) Defendants' denial is confusing where
it inconsistently states that her request for one-level L5-S1 fusion
cannot be certified because this "procedure at more than 2 levels (which
you have) does not meet the guidelines of your insurance coverage," id.
at 3-4; (2) Defendants have erroneously represented that it is
"undisputed" that she has "greater than 2 level degenerative disc
disease" where the record contains no evidence that "any age related
degeneration in [her] lumbar spine was severe or problematic except at

L5-S1[,]" id. at 4-9 (emphasis omitted); and (3) Defendants, in bad faith, changed their reasons for denying Darrah's surgery authorization during her appeal, id. at 9-11.

Care Allies and the Zenith Defendants argue that they did not abuse their discretion in denying Darrah's requests for authorization for back surgery. Care Allies's Opening Br. at 10; Care Allies's Reply Mem. of Law in Support of Mtn. for Summary Judgment of ERISA Benefits Claim (Court's Doc. No. 37) ("Care Allies's Reply") at 15-16; Zenith Defendants' Resp. Br. at 3-4, 6-7. They argue that the Plan guidelines preclude authorization for lumbar fusion surgery, whether at one level or more, where the claimant has multiple level degenerative disc disease. Care Allies's Reply"at 2; Zenith Defendants' Resp. Br. at 6-7. Because medical records reflect that Darrah had degenerative disc disease at four lumbar spine levels, they argue, the Plan foreclosed her request for authorization for L5-S1 lumbar fusion surgery. Id.

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3)

relies on clearly erroneous findings of fact." Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005) (citations omitted).

Here, Care Allies explained its denial decisions, so the first factor identified above is not at issue. See AR at 0001-0002, 0008-0011, and 0013-0014.[6] Darrah does not specifically argue that the defendants have construed provisions of the plan in a way that conflicts with the plain language of the plan. Instead, Darrah's arguments focus on the remaining factor, arguing that Care Allies relied on clearly erroneous findings of fact. Darrah's Opening Br. at 2, 4-9. Having considered Darrah's arguments in accordance with the deferential standard of review, the Court must conclude that Care Allies and the Zenith Defendants did not abuse their discretion.

In making the factual finding that the requested surgery was not

---

[6]Darrah correctly maintains that Care Allies's administrative denial explanations are confusing and inconsistent. The Court notes that Care Allies's briefing on the pending motions also contains unfortunate inconsistencies. Although the Court is concerned about the confusion these inconsistencies must have caused Darrah, the Court's role is limited to determining whether, under the plan, the final denial of benefits was arbitrary and capricious or an abuse of discretion.

medically necessary, Care Allies relied on medical guidelines.[7]   The

guidelines provide:

> Lumbar fusion ... for up to two adjacent spinal segment
> levels, is considered medically necessary for ... chronic,
> presumably discogenic, low back pain, when BOTH of the
> following conditions have been met:
>> ›  unremitting pain and disability that has proved refractory
>>    to at least six consecutive months of conservative medical
>>    management ...
>> ›  degenerative disc disease demonstrated on appropriate
>>    imaging studies ... as the likely cause of pain ....
>
> Lumbar fusion for the management of ... the following
> condition[] is considered not medically necessary:
>
> --     multiple-level (i.e., > 2 level) degenerative disc disease

AR at 0031-0032 (emphasis added).  Thus, for a requested lumbar

fusions to qualify under these guidelines, the claimant must thread the

needle between at least one but no more than two levels of

degenerative disc disease.  Although one could guess that few claimants

would be pre-certified under these guidelines, it is not the function of

---

[7]Although the SPD defines the term "medically necessary" (Doc. 30-2 at 40),
the definition does not expressly incorporate or even refer to medical guidelines.
The medical guidelines at issue here appear to be generated by Care Allies.  They
contain a prefatory note warning that a participant's benefit plan "may differ
significantly from the standard upon which this Medical Necessity Guideline is
based" and that, in the event of a conflict, a participant's benefit plan supercedes
the guidelines.  See AR at 31.

this Court to challenge such medical judgments. "[E]mployers have large leeway to design disability and other welfare plans as they see fit...." Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003).

Care Allies determined that Darrah's medical records reflected that she had 4-level degenerative disc disease. AR at 00018. It concluded that, under the guidelines, the surgery she requested was not medically necessary because she had degenerative disc disease at more than two levels. AR at 0013. The Court concludes that Care Allies did not rely on clearly erroneous findings of fact in reaching its determination. It may be true, as Darrah argues, that no evidence shows that "any age related degeneration in [her] lumbar spine was severe or problematic except at L5-S1." Darrah's Opening Br. at 5. But the guidelines do not specify a required degree of severity, and medical reports in the record do show that Darrah had some degenerative disc disease at multiple levels. A report reflecting a September 2005 MRI of Darrah's lumbar spine indicates, among other things, "a small focal disk protrusion" at T12-L1, "a midline disk bulge... [and] mild facet arthrosis" at L1-L2, "[m]ild facet hypertrophy [and m]ild broad-based

bulge of the disk" at L2-L3, and "[s]mall facet effusions .... [with] mild narrowed" disc space at L3-L4 leading to an overall impression of "[m]ild bulging of the disks at multiple levels ...."  AR at 0066.

Also, a report reflecting a January 2007 MRI of Darrah's lumbar spine indicates "a mild central disk protrusion" at L1-L2, "a diffuse mild disk protrusion with mild facet ligamentous hypertrophy" with "minor tapering of the central canal" at L2-L3, "[m]ild facet and ligamentous hypertrophy ... dorsally" with "mild central and foraminal narrowing" at L3-L4, and "moderate facet and ligamentous hypertrophy with a mild degree of central and bilateral foraminal narrowing due to the combined effects of the disk and prominent facets" at L4-L5.  AR at 0083.

From these reports, Care Allies's physician advisor, Gary Hutchison, M.D., concluded that Darrah had degenerative disc disease at four levels of her lumbar spine.  AR at 0018, 0021.  Darrah did not further appeal to present evidence to contradict this finding.  In light of these medical reports which Dr. Hutchinson interpreted to reveal multiple level degenerative disc disease, the Court cannot conclude that

the physician's conclusion or Care Allies's reliance on it in denying Darrah's claim were arbitrary, capricious, or clearly erroneous.  Thus, Care Allies and the Zenith Defendants did not abuse their discretion. The Court therefor recommends that Care Allies's summary judgment motion on Darrah's ERISA benefits claim (Court's Doc. No. 28) be granted and that Darrah's cross-motion for summary judgment (Court's Doc. No. 32), to the extent that it relates to her benefits claim, be denied.

> B.   <u>Request for Plan Documents</u>

> > 1.   <u>Background</u>

After Care Allies denied Darrah's pre-authorization request, Darrah's counsel, on November 9, 2007, sent a letter to Care Allies and Gary Hutchison, M.D., a physician advisor to Care Allies, requesting various documents related to the Plan and Darrah's claim for benefits. AR at 0058-0059.  Darrah's counsel advised in the letter that "[i]f you do not possess these documents, I am sending a duplicate copy of this letter to Zenith Administrators, to request these documents from them."  AR at 0059.  Zenith received a copy of the letter on November

13, 2007.  Pltf's Stmt. of Genuine Issues ("Darrah's SGI") (Court's Doc.

No. 34) at ¶ 12.  Care Allies received the letter on November 14, 2007.

Id.

On December 12, 2007, Darrah's counsel received from Barbara

Billman of the Care Allies Privacy Office a letter that stated:

> Enclosed are the records you requested for the above
> individual.  This is the complete record.  The documents
> regarding the plan must be obtained from the plan
> administrator.

Aff. of James G. Edmiston (Court's Doc. No. 35) at Ex. 2.

On October 14, 2008, Darrah's counsel received the requested

plan documents from Montana Retail Store Employees Health and

Welfare Plan's counsel.  Id. at Ex. 3.

2.    Analysis

Care Allies moves for summary judgment on Darrah's claim for

ERISA penalties under 29 U.S.C. §§ 1024 and 1132(c).  Court's Doc. No.

40.  Care Allies, relying on the Ninth Circuit's holdings in Sgro v.

Danone Waters of North America, Inc., 532 F.3d 940, 945-46 (9th Cir.

2008), and Moran v. Aetna Life Ins. Co., 872 F.2d 296, 299-300 (9th Cir.

1989), argues that because it is neither the Plan administrator nor

sponsor, it cannot be liable under section 1132(c).  Care Allies's Mem. of Law in Resp. to [Darrah's] Mtn. for Summary Judgment and in Support of Cross Mtn. for Summary Judgment – 29 U.S.C. §§ 1024, 1132(c) (Court's Doc. No. 41) at 4-6.

In response, Darrah concedes that Care Allies is correct and that its motion is well-taken, but maintains her claim for penalties against the Zenith Defendants.  Darrah's Brief in Resp. to [Care Allies's] Mtn. for Summary Judgment on ERISA Penalty Issue Pursuant to 29 U.S.C. §§ 1024, 1132(c) (Court's Doc. No. 47) at 2.  Because Care Allies moves for summary judgment only on its own behalf, the Court recommends that Care Allies's summary judgment motion on Darrah's claim for ERISA penalties under 29 U.S.C. §§ 1024 and 1132(c) (Court's Doc. No. 40)  be granted.

The only motion remaining, then, is that portion of Darrah's cross-motion for summary judgment that relates to her claim for ERISA penalties under 29 U.S.C. §§ 1024 and 1132(c) against the Zenith Defendants.  See Court's Doc. No. 32.

Darrah argues that she requested Plan documents from Zenith

and the Plan, but neither provided them until 306 days after her request when the Plan's counsel produced them.  Darrah's Opening Br. at 11-13.  Darrah argues that she need not show prejudice to receive an award of penalties.  She adds, however, that the Court may consider prejudice she suffered in delayed receipt of the documents because the delay kept her from learning that the Plan provided a 12-month medical benefits extension during total disability where coverage ended for a Plan member.  Id. at 13-15.  Darrah also argues that she is entitled to attorney's fees.  Id. at 15-17.

In response, the Zenith Defendants argue that Darrah's claim against them fails for various reasons.  First, they argue that Darrah never directed a request for the documents to Zenith as the plan administrator, but instead only sent a request to Care Allies and to one of Care Allies's physicians.  Zenith Defendants' Resp. Br. at 7-8.  They argue that because Darrah did not address her document request to Zenith or to the Plan itself, but rather sent only a copy of her request to Zenith and sent nothing to the Plan itself, Darrah's claim fails.  Id.

Second, the Zenith Defendants argue that Darrah did not follow

up with Zenith to obtain the requested documents even after Care Allies informed her that it did not have all of the documents.  Id. at 8.

Third, the Zenith Defendants argue that Zenith already had provided Darrah with a copy of the Summary Plan Description ("SPD") in June 2003.  Id. at 8-9.  Because Darrah already had the SPD, they argue, she was not prejudiced by not receiving a second copy.  Id. at 9.

Fourth, the Zenith Defendants argue that their records indicate that Care Allies complied with Darrah's counsel's information request. Id.  Thus, they argue, they believed Care Allies had taken care of the request for documents and that there was nothing left for them to do. Id.

Fifth, the Zenith Defendants argue that factors the Court is to consider in determining whether to assess penalties against them for failure to produce documents weigh against imposition of the $30,600 Darrah seeks.  Id. at 10-13.  They argue that:

(1)    they committed no intentional misconduct and engaged in no bad faith, but rather reasonably believed Care Allies took care of the request since Darrah's counsel addressed the request to Care Allies and not to the Plan Administrator;

(2)    Darrah suffered no prejudice, despite her claim that the SPD

contained a provision that, had she received it, would have alerted her to the availability of extended medical benefits because:

> (a)   no evidence supports her claim that she had a "total disability";
>
> (b)   Darrah already had received a copy of the SPD in June 2003; and
>
> (c)   Darrah never was eligible for the lumbar fusion surgery and would not have been eligible for it even had her medical benefits been extended.

(3)   Darrah made no direct request for documents to the plan administrator, but rather made only a single request to Care Allies and did not follow up with Zenith even after Care Allies responded that it did not maintain the Plan documents.

Id. at 10-12.

ERISA requires that, upon written request of any plan participant or beneficiary, the plan administrator must furnish a copy of certain documents including the "latest updated summary plan description," or "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); see also Moran, 872 F.2d at 299-300.  A plan participant must specifically request something that he or she was entitled to receive before liability may be imposed for the failure to provide requested documents.  Williams v. Caterpillar, Inc., 944 F.2d

658, 667 (9th Cir. 1991).  Failure to provide the documents may result in

fines of up to $100 (raised to $110 by 29 C.F.R. § 2575.502c-1 for

violations occurring after July 29, 1997) per violation per day of delay

and recovery of costs and attorneys fees under subsections 1132(c) and

(g), respectively.  Only a plan administrator can be held liable under

section 1132(c)(1).  Sgro, 532 F.3d at 945.

     Here, the record reflects that Darrah, through a letter from her

counsel, made a written request for documents under 29 U.S.C. §

1132(c).  AR at 0058-59.  The letter's language, which mirrors the

statute's language, specifically itemizes the documents sought.

Compare AR at 0059 with 29 U.S.C. § 1024(b)(4).  Zenith does not

dispute that Darrah was entitled to the documents, that she requested

them with the requisite specificity, or that it did not timely provide

them to her.  Thus, the Court concludes that Zenith, as the plan

administrator, is liable under 29 U.S.C. § 1132(c) and that imposition of

a fine is appropriate.  See Besser v. Prudential Ins. Co. of America,

2008 WL 4483796, *6 (D. Hawaii 2008) (noting that fine is justified

where ERISA required plan administrator to provide information to

plan participant who requested it and administrator failed or refused to provide information) (citing Kleinhaus v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir. 1987)).

The Court is not persuaded by Zenith's arguments advanced in resisting Darrah's claim for penalties. First, although it is true that Darrah's counsel addressed the letter to Care Allies and one of its physician advisers, it also is true that he sent a duplicate copy to Zenith "to request these documents from them." AR at 0059. Presumably, this duplicate copy was delivered in an envelope addressed to Zenith and thus was "directed" to Zenith contrary to Zenith's argument that Darrah's counsel "directed" the request for documents only to Care Allies. The Authorization(s) for Release of Information/Documents, enclosed with the letter, were directed to "Care Allies and/or Zenith Administrators." AR at 60-61. Furthermore, the "Case Management Notes" provided from Zenith's files indicate that Zenith received the request for documents and simply forwarded it to Barbara Billman with Care Allies, rather than providing the plan

documents itself or ensuring that Care Allies did so.[8]

More importantly, Zenith does not deny that it received the letter requesting documents nor does it deny that it was aware of its obligation, under ERISA, to provide them. Darrah's counsel even included in the letter a reminder of the obligation. Id. ("As you probably know, ERISA requires that these documents be provided within 30 days or penalties may be assessed pursuant to ERISA ... 29 U.S.C. § 1132(c).").

Second, Zenith has pointed to no authority, and the Court is aware of none, requiring Darrah or her counsel to "follow up" with Zenith to obtain the requested documents after Care Allies informed her that it did not have them. Although the better practice may have been for Darrah's counsel to "follow up", it is undisputed that he sent Zenith a duplicate copy of the written request for documents explaining that he was sending it to Zenith "to request these documents from them." Id. And one could reasonably argue that Zenith, as the party

---

[8]The entire entry dated November 16, 2007, reads as follows: "NOTES: 11/16/2007 12:19 PM EST, WAYNE ISAACS, PHILADELPHIA CARE CENTER: Recv'd requ4est (sic) form (sic) Edminston (sic) # Coltion (sic) Law Firm woth (sic) HIPPA compliant auth form reqeusting (sic) records and guidelines. forwarded to Barbara Billman." See Doc. No. 43-3 (Attachment A to Declaration of Joseph W. Voiland).

potentially liable for a fine under ERISA, should have been the one to attempt a "follow up" with Darrah if it was unclear whether she received the requested documents that ERISA required Zenith to provide.

Third, that Zenith provided Darrah with an SPD in June 2003 does not address whether she suffered prejudice by Zenith's failure to comply with her request for the "latest updated SPD" or the "SPD that was effective on [August 1, 2007]."  No evidence is in the record that the SPD provided to Darrah in June 2003 is the same as those that she later requested.  Even if it was the same, the record does not show that Zenith so advised Darrah despite knowing that she requested both the latest update SPD and the SPD in effect on August 1, 2007.

Finally, although Zenith may have believed that Care Allies had already taken care of Darrah's request and that there was nothing left for it to provide, Zenith has cited no authority holding that its mistaken belief excuses it of its obligation under ERISA to provide the requested documents.  While its erroneous belief may have an impact on the amount of the fine imposed, it does not affect Zenith's liability under

ERISA for failing to provide the requested documents.

Having concluded that Zenith is liable under 29 U.S.C. § 1132(c) and that imposition of a fine is appropriate, the Court next must consider the amount of the fine. The fine amount is left to the discretion of the district court. 29 U.S.C. § 1132(c); Rosile v. Aetna Life Ins. Co., 777 F.Supp. 862, 874-75 (D. Kan. 1991), aff'd, 972 F.2d 357 (10th Cir. 1992).

In determining the amount of a fine to be imposed, courts generally look at whether the plan administrator acted in bad faith and at whether the plan participant was prejudiced by delay in receiving the requested documents. See Crosby v. Rohm & Haas Co., 480 F.3d 423, 432 (6th Cir. 2007). Prejudice and bad faith, however, are not prerequisites for imposition of a fine under 29 U.S.C. § 1132(c). Moothart v. Bell, 21 F.3d 1499, 1506 (10th Cir. 1994) (prejudice and injury not prerequisites) (citing cases); Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.) (affirming award despite fact that failure to respond was only result of neglect), cert. denied, 488 U.S. 826 (1988); Kincaid v. Harcourt Brace Jovanovich, Inc., 863 F.Supp. 1471, 1478 (D. Kan.

1994) ("A finding of bad faith by the plan administrator and prejudice to the plaintiff are not required before penalties for failure to provide documents may be awarded, but a court will surely consider such factors in making its determination.").

Here, the record does not support a finding that Zenith acted in bad faith in failing to provide the requested documents in the time the statute requires. Zenith maintains that it mistakenly believed that Care Allies had taken care of Darrah's document request. While this does not relieve it of liability for a fine under the statute, as noted, it does support the conclusion that Zenith did not act in bad faith. Rather, it appears to the Court that Zenith was negligent in failing to provide the requested information.

Also, the Court is not completely persuaded by Darrah's argument that she suffered prejudice from Zenith's failure to provide the documents. She premises her argument on her position that she is totally disabled and, as such, would have benefitted from continuing health insurance coverage had she been informed of continuing coverage through the documents that she did not timely receive.

The problem with Darrah's argument, as Zenith notes, is that there is no evidence in the record supporting her contention that she is "totally disabled" or that she was harmed by not having her health insurance coverage continued after she left her employment with Albertsons, Inc.  But, it is reasonable to conclude that Darrah suffered at least some harm because of the 306-day delay in getting the documents that she requested.  The Zenith Defendants do not dispute the length of the delay Darrah experienced in getting the requested documents.

In sum, the Court concludes that: (1) evidence does not support Darrah's allegation that Zenith acted in bad faith; (2) evidence does not support Darrah's claim of total disability that would have extended her health care coverage had she known of the extended coverage through the documents that she did not timely receive; and (3) Darrah suffered some harm by the 306-day delay that she endured in getting the documents she requested.  In light of these conclusions, the Court believes that it is appropriate to assess against Zenith a fine of $35.00 per day for each of the 306 days of delay in providing Darrah with the

documents that she requested.

Thus, the Court recommends that Darrah's Cross-Motion for Summary Judgment (Court's Doc. No. 32), to the extent it seeks a fine for the Zenith Defendants' failure to produce requested documents, be GRANTED, and that the Zenith Defendants be assessed a fine totaling $10,710.00.

C.   Attorney's Fees

Darrah seeks attorney's fees.  Darrah's Opening Br. at 15-17. Under 29 U.S.C. § 1132(g)(1), a court, in its discretion, may award reasonable attorney's fees and costs to either party.

In the Ninth Circuit, courts are to consider, among others, the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980).

The Court first concludes that an award of attorney's fees against Care Allies would be inappropriate.  The fifth factor listed above weighs heavily against Darrah's request for fees.  As discussed above, the Court has recommended that Care Allies prevail on Darrah's claim for denial of medical treatment benefits.  And Darrah has acknowledged that Care Allies is not subject to statutory penalties on Darrah's claim of delay in getting requested documents.  Thus, Darrah's claim for attorney's fees against Care Allies should be denied.

With respect to the Zenith Defendants, the Court has recommended that Darrah's claim for denial of medical treatment benefits be denied.  Thus, Darrah's request for an award of attorneys fees against the Zenith Defendants on this claim also should be denied.

But, as discussed above, the Court believes that Zenith should be fined for its failure to produce requested documents.  Applying the factors from Hummell, above, the Court concludes that fees are not appropriate.

First, as discussed, the record does not support a conclusion that Zenith acted in bad faith by failing timely to produce the documents

that Darrah requested.  This factor weighs against an attorney's fees award.

Second, no evidence was presented about the Zenith Defendants' ability to satisfy a fees award, although the Court presumes that they would be able to satisfy such an award if one were imposed.  This factor weighs in favor of an attorney's fees award.

Third, it is unclear whether such an award would deter others from similar conduct.  Again, no evidence indicates that the Zenith Defendants acted in bad faith, so deterrence of bad acts is not at issue. But the Court concluded that Zenith was at least negligent.  An award might encourage others to take greater care.  This factor weighs neither in favor nor against a fees award.

Fourth, by seeking a fees award, Darrah may seek to benefit other plan participants who request documents from the plan administrator. But it cannot reasonably be argued that she sought through this case to resolve a significant legal question under ERISA.  This factor weighs neither in favor nor against a fees award.

Finally, as noted, it is the Court's opinion that the Zenith

Defendants should prevail on Darrah's claim against them for medical treatment benefits, but that Darrah should prevail, in part, on her claim for statutory penalties for the delay in producing documents. This factor weighs neither in favor nor against a fees award.

Having considered all of these factors, as well as its conclusion that Zenith should be liable for a $10,710.00 fine, the Court concludes that an award of attorney's fees is not appropriate and recommends that Darrah's request for fees be denied.

IV.   <u>CONCLUSION</u>

Based on the foregoing,

IT IS RECOMMENDED as follows:

1.   The Motion for Summary Judgment of ERISA Benefits Claim (Court's Doc. No. 28) made by Defendant International Rehabilitation Associates, Inc., doing business as Intracorp or Care Allies ("Care Allies") be GRANTED;

2.   Darrah's Cross-Motion for Summary Judgment (Court's Doc. No. 32), to the extent that it relates to her benefits claim, be DENIED, but that the same motion, to the extent it seeks a fine for the Zenith Defendants' failure to produce requested documents, be GRANTED, and that the Zenith Defendants be assessed a fine totaling $10,710.00, as set forth herein ;

3.   Care Allies's Motion for Summary Judgment on Darrah's claims under 29 U.S.C. §§ 1024 and 1132(c) (Court's Doc. No. 40) be

DENIED; and

4.      Darrah's claim for attorney's fees be DENIED.

NOW, THEREFOR, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation portion must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 31st day of March, 2009.

/S/ *Carolyn S. Ostby*
Carolyn S. Ostby
United States Magistrate Judge